JARED M. TOFFER (SBN 223139)
jtoffer@fwtrl.com
LORI G. GINEX (SBN 223954)
lginex-orinion@fwtrl.com
**FINLAYSON WILLIAMS TOFFER**
**ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Phone:  949.759.3810 / Fax:  949.759.3812

Attorneys for Defendant
DISCOVER BANK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION – RIVERSIDE

| | |
|---|---|
| FRED J. PETERS, an individual,<br><br>           Plaintiff,<br><br>   vs.<br><br>EQUIFAX INFORMATION SERVICES LLC, is a Corporation; EXPERIAN INFORMATION SOLUTIONS INC., a corporation; DISCOVER BANK, is a business entity; form unknown; SST/CIGPF1CORP, an unknown business entity and DOES 1-10, Inclusive,<br><br>           Defendants. | CASE NO. EDCV12-01837-TJH(OPx)<br><br>Hon. Terry J. Hatter, Jr.<br>Courtroom 17<br><br>**DEFENDANT DISCOVER BANK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF FRED J. PETERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**<br><br>**<u>Hearing</u>**<br>Date:  November 25, 2013<br>Time:  UNDER SUBMISSION<br>Place:  Courtroom 17<br>        312 North Spring Street<br>        Los Angeles, CA 90012<br><br>Complaint Filed:  October 23, 2012 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   PLAINTIFF INCURRED AT LEAST $1,600 IN LEGITIMATE
      CHARGES HE NEVER PAID, AND DISCOVER HAD NO
      OBLIGATION TO CREDIT PLAINTIFF'S ACCOUNT AGAINST
      SUCH LEGITIMATE CHARGES.................................................................. 2

      A.   It is Undisputed that Plaintiff Incurred $1,600 in Legitimate
           Charges Post-Dating His Discovery of the Fraud, Which He
           Never Paid. ..................................................................................... 3

      B.   Discover Was Not Legally Required to Provide Further Credits. ............ 4

III.  DESPITE PLAINTIFF'S ARGUMENTS AND PURPORTED
      "EVIDENCE," EACH OF HIS CAUSES OF ACTION FAIL AS A
      MATTER OF LAW .................................................................................. 8

      A.   Plaintiff Cannot Establish an FRCA Claim. ............................................. 8

           1.   Plaintiff Has Not Established Discover Conducted
                Unreasonable Investigations Under the Circumstances. ................. 8

           2.   Plaintiff Has Not Established that Discover Was
                Furnishing Inaccurate Reports When It Responded to the
                ACDV Forms. .............................................................................. 12

      B.   Plaintiff Cannot Establish a CCRAA Claim. ........................................... 14

      C.   Plaintiff Cannot Establish an Identity-Theft Collections Claim,
           and Plaintiff Has *Not Even Attempted to Argue Otherwise*. .................... 15

IV.   SUMMARY JUDGMENT IS INDEPENDANTLY APPROPRIATE
      AS TO ALL OF PLAINTIFF'S CLAIMS ON ESTOPPEL
      GROUNDS ............................................................................................ 15

V.    IF ANY CLAIM REMAINS, THE COURT SHOULD
      DRAMATICALLY LIMIT PLAINTIFF'S POTENTIAL DAMAGES ........... 17

      A.   Plaintiff Cannot Recover Damages Predating His Claims. .................... 17

      B.   Plaintiff Cannot Recover Any Economic Damages, in Large
           Part, Because All Such Damages Relate to Plaintiff's Business. ............. 18

           1.   It is Well Settled that Plaintiff May Not Recover Any
                Economic Damages Sustained by His Business as a
                Matter of Law. ............................................................................. 19

           2.   The $15,000 to $20,000 Plaintiff Contends Discover
                "Owes" Plaintiff is Also Not Recoverable ..................................... 22

VI.   CONCLUSION ..................................................................................... 22

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aklagi v. Nationscredit Fin.*,
196 F. Supp. 2d 1186 (D. Kan. 2002) ................................. 18

*Basch v. Bank of Am. Nat. Trust & Sav. Ass'n*,
22 Cal. 2d 316 (1943) ................................................ 7

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ................................... passim

*Edward Fineman Co. v. Superior Court*,
66 Cal. App. 4th 1110 (1998) ...................................... 16

*Espresso Roma Corp. v. Bank of America*,
100 Cal. App. 4th 525 (2002) ....................................... 7

*George v. Equifax Mortgage Servs.*,
2010 WL 3937308 (E.D.N.Y. Oct. 5, 2010) ...................... 20, 21

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .................................. 9, 10

*Hariton v. Chase Auto Finance Corp.*,
2010 WL 3075609 (C.D. Cal. Aug. 4, 2010) ..................... 17, 19

*Johnson v. Wells Fargo Home Mortgage, Inc.*,
2011 WL 3651873 (D. Nev. Aug. 17, 2011) ......................... 21

*Johnson v. Wells Fargo Home Mortgage, Inc.*,
558 F. Supp. 2d 1114 (D. Nev. 2008) ..................... 19, 20, 21

*King v. Asset Acceptance, LLC*,
452 F. Supp. 2d 1272 (N.D. Ga. 2006) ............................ 8, 9

*Minksoff v. American Express Travel Related Servs. Co., Inc.*,
98 F.3d 703 (2nd Cir. 1996) .................................. 5, 6, 7

*Natale v. TRW, Inc.*,
1999 WL 179678 (N.D. Cal. Mar. 30, 1999) ..................... 20, 21

*Nelson v. City of Davis*,
571 F.3d 924 (9th Cir. 2009) ...................................... 4

*Nelson v. Equifax Info. Servs., LLC*,
522 F. Supp. 2d 1222 (C.D. Cal. 2007) ........................... 18

*Roy Supply, Inc. v. Wells Fargo Bank*,
39 Cal. App. 4th 1051 (1995) ..................................... 16

*Stich v. BAC Home Loans Servicing, LP*,
2011 WL 1135456 (D. Colo. Mar. 29, 2011) ........................ 19

*Stroud v. Bank of America*,
886 F. Supp. 2d 1308 (S.D. Fla. 2012) ..................... 9, 10, 11

*Tilley v. Global Payments, Inc.*,
603 F. Supp. 2d 1314 (D. Kan. 2009) ......................... 20, 21

*Transamerica Ins. Co. v. Standard Oil Co.*,
325 N.W.2d 210 (N.D. 1982) ........................................ 6

ii

Page(s)

**Statutes**

15 U.S.C. § 1666(a) ............................................................................. 5
15 U.S.C. § 1666(b)(1) ....................................................................... 5
15 U.S.C. § 1666(c) ............................................................................ 6
15 U.S.C. § 1681a(c) ......................................................................... 21
15 U.S.C. § 1681a(d)(1)(A) .............................................................. 21
15 U.S.C. § 1681s-2(a)(1)(D) ........................................................... 14
Cal. Civ. Code § 1785.25(a) ............................................................. 18
Cal. Civ. Code § 1785.3(b) ............................................................... 21
Cal. Civ. Code § 1785.3(c) ............................................................... 21
Cal. Civ. Code § 1788.18 .................................................................. 18
Cal. Civ. Code § 1798.93 .................................................................. 18

**Other Authorities**

*Taking Charge – What to do if Your Identity is Stolen,*
    Federal Trade Commission, FTC.gov/idtheft, at 23 ................................ 5

Discover submits the following Reply in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment Against Plaintiff Fred J. Peters Pursuant to Federal Rule of Civil Procedure 56 (the "Motion"):[1]

## I.    INTRODUCTION

This case is not about Discover's reporting or collections.  It is about Plaintiff's inability to accept responsibility for his failure to comply with his obligations under the law.  Plaintiff has admitted, for example, that he:  did not timely review his Discover account statements; did not timely review his bank statements; gave his employee access to his business' finances but then did not supervise her; and made over $1,600 in legitimate charges on the account after discovering his employee's unauthorized transactions, but he has not paid Discover for all such legitimate charges.

In an effort to bury his prior truthful – yet damaging – testimony and thereby survive summary judgment, Plaintiff submits long declarations from his wife and his purported expert "disputing" facts that he has consistently admitted and/or Discover has otherwise shown to be true.  He also presents various new "facts" that are wholly unsubstantiated, irrelevant to the issues presented in the Motion, and/or otherwise inadmissible.  For the reasons set forth fully in Discover's Evidentiary Objections to and Motion to Strike Plaintiff's Evidence and Discover's Reply to Plaintiff's Statement of Genuine Disputes, both filed herewith, Plaintiff's "evidence" does not create a triable issue of material fact precluding a grant of summary judgment here.

When one turns down the "noise" created by Plaintiff's papers, it is apparent that summary judgment is appropriate here for at least the following reasons:

- It is undisputed that, after the unauthorized transactions were discovered, Plaintiff incurred at least $1,600 in legitimate new charges (or $458 based on the improper testimony from his wife) that he never paid, and because Discover did not

---

[1]    Capitalized terms used but not defined in this Reply have the meaning given to them in the Motion.

1

negatively report more than that amount during the relevant time period, Plaintiff cannot establish his reporting claims;

- It is undisputed that Plaintiff failed to review his account statements and timely report unauthorized transactions, and therefore, Discover was under no obligation to further credit is account;

- It is undisputed that Discover reasonably investigated the narrow dispute specifically set forth in the relevant ACDV forms, which dealt with whether the account at issue was Plaintiff's, which Discover correctly indicated was the case;

- There is not a shred of evidence indicating that Discover knowingly reported anything "inaccurate" concerning Plaintiff's account during any particular time period; and

- There is also not a shred of evidence indicating that Discover ever attempted to collect on any "identity-theft" debt (the account was always Plaintiff's and he used it for legitimate purchases), nevermind on any "unauthorized" charges.

For these reasons, the Court should grant summary judgment.

In the alternative, if any of Plaintiff's claims survive, the Court should rule that Plaintiff cannot recover any damages predating a provable wrongful act on the part of Discover or any damages relating to his sole proprietorship, as a matter of law.

## II.   PLAINTIFF INCURRED AT LEAST $1,600 IN LEGITIMATE CHARGES HE NEVER PAID, AND DISCOVER HAD NO OBLIGATION TO CREDIT PLAINTIFF'S ACCOUNT AGAINST SUCH LEGITIMATE CHARGES

All of Plaintiff's claims and Discover's estoppel defense revolve around one simple fact admitted by Plaintiff – that he incurred at least $1,600 in legitimate new charges that he never paid – and one straightforward legal issue – that Discover had no obligation to credit Plaintiff's account for years-old unauthorized charges against new legitimate charges.  Based on these circumstances, summary judgment is appropriate.

**A.     It is Undisputed that Plaintiff Incurred $1,600 in Legitimate Charges Post-Dating His Discovery of the Fraud, Which He Never Paid.**

Plaintiff repeatedly admitted that he incurred ***at least $1,600 in legitimate charges*** on his account ending in 2476 (the account at issue in this case, which was a new account Discover created for Plaintiff's use after the fraud was discovered) that ***he simply never paid***.  SUF 25-27.  Plaintiff made such repeated admissions after Discover's counsel went through the 2476 account statements with him in detail and Plaintiff specifically admitted that he recognized most of the new charges ***as his***.  And while Plaintiff also admitted that he was the only one with access to the 2476 account (SUF 24) and that his secretary had been "caught" by the time such account was opened (SUF 14, 24), Discover's counsel gave him the benefit of the doubt and did not include those charges Plaintiff ***did not*** immediately recognize – though they must be his, as he admits no one but him had access to the 2476 account number (SUF 24).[2]  In going through the account statements, Discover's counsel also gave Plaintiff credit for every payment that he made.  After Discover's counsel completed the calculations together with Plaintiff, Plaintiff repeatedly – ***and without reservation*** – admitted that at least $1,600 in legitimate charges were still owed on his 2476 account.  SUF 25-26.  He further admitted that he has an obligation to pay Discover for such legitimate charges that he incurred.  SUF 27.

Plaintiff's FCRA claim revolves around the fact that Discover negatively reported account 2476 with a delinquent balance of $355 (SUF 34).  Because Plaintiff admits he owed at least $1,600 – significantly more than Discover ever negatively reported or attempted to collect – Plaintiff cannot claim that Discover inaccurately

---

[2] Not surprisingly, Mr. Peters argues that he was able to review his 2006 through 2010 account statements in early 2011 and could determine, merely by looking at the charges, which were legitimately charged by him and which were charged by his employee, Ms. Markham.  SUF 18.  But when asked to make a similar determination in 2013 for charges showing on the 2476 account statements, he was unable to "recognize" a good handful of the charges that simply must be his.

1  reported or wrongly attempted to collect on debt incurred through unauthorized

2  charges.  Thus, summary judgment is appropriate.  Recognizing the gravity of this

3  single fact, Plaintiff attempts to blunt its significance by claiming, in part, that such

4  fact is "disputed."  Opp. at 16:15-28.  But Plaintiff is mistaken.

5       Plaintiff has done nothing to effectively "dispute" his clear admissions

6  concerning the legitimate charges on his account.  Indeed, Plaintiff's declaration

7  includes no reference to the legitimate charges he made post-dating the fraud.  Instead,

8  Plaintiff's wife "testifies" on the issue.  Specifically, Mary Peters' declaration includes

9  the unsubstantiated conclusion that Plaintiff never owed more than $458 after several

10  payments on the new account.  Opp. to SUF 24-27; M. Peters Decl. at ¶ 14.  But there

11  are multiple problems with such "testimony."  As an initial matter, because it conflicts

12  with Plaintiff's testimony, it is a "sham affidavit," which should not be considered.

13  *Nelson v. City of Davis,* 571 F.3d 924, 928-29 (9th Cir. 2009).  Plaintiff's wife is in no

14  position to make this determination since she is not a joint account holder, did not

15  make charges using the 2476 account, and has no basis to evaluate which charges were

16  legitimate and remain unpaid.  Further, even if she had some basis to testify that

17  charges made on the 2476 account were not legitimate, her testimony would be

18  irrelevant since Plaintiff has not presented any evidence showing that he ever

19  challenged any of the new charges on the 2476 account.  Accordingly, Discover had

20  the right to presume them to be legitimate and collect on them.  In sum, Plaintiff's

21  attempt to avoid his clear admissions fails and such admissions remain undisputed.

22       **B.     Discover Was Not Legally Required to Provide Further Credits.**

23       In the alternative, Plaintiff argues that even if there were legitimate charges on

24  the 2476 account, Discover was required to further credit that account against such

25  legitimate charges for alleged years-old unauthorized charges on his prior account.

26  Opp. at 16:15-20 (arguing "[c]onservatively, Mr. Peters ***is owed*** $15,000 to $20,000 by

27  Discover" (emphasis added)).  There are multiple problems with this argument,

28  including that it has never before been made by Plaintiffs, it is unsubstantiated by any

4

admissible evidence, and it is simply new conjecture on the part of Plaintiff's wife.  But the most significant problem with the argument is that it is not supported by ***a single citation to any legal authority***.  That is clearly because the law establishes ***no such obligation***.  To the contrary, the law consistently assigns the risk and loss associated with long-undiscovered unauthorized transactions on consumers, such as Plaintiff, because such consumers are in the best position to detect the fraud.

Under the Truth in Lending Act ("TILA") and the California Commercial Code, Plaintiff was required to timely review his Discover account statements and his bank statements and promptly inform Discover and his bank of any unauthorized transactions.  Mot. at 20:3-13 & n.1.  Specifically with regard to his Discover account, Plaintiff was required to review and report "billing errors" – which include unauthorized transactions "not made by the [him]"  – within 60 days.  15 U.S.C. § 1666(a), (b)(1) (providing for the 60-day requirement and defining billing error, in part, as "a reflection on a statement of an extension of credit which was not made by the obligor"); *see generally Taking Charge – What to do if Your Identity is Stolen*, Federal Trade Commission, FTC.gov/idtheft, at 23 ("To dispute fraudulent charges, contact the credit card issuer within 60 days of the day the credit card issuer sends the bill showing the fraudulent charges").

These rules were established because they appropriately distribute the risk of loss to those most capable of uncovering the fraud.  For example, the Commercial Code provision requiring consumers to exercise reasonable care and promptness in examining their bank statements is "based upon a determination that the depositor is in the better position to discover an alteration of [a] check or forgery of his or her own signature."  *Minksoff v. American Express Travel Related Servs. Co., Inc.*, 98 F.3d 703, 709 (2nd Cir. 1996) (internal quotation marks and citation omitted).  And as the Second Circuit has explained, "[t]his policy is no less applicable to credit card holders than it is to bank depositors."  *Id.*  "Once a cardholder has established a credit card account, and provided the card issuer is in compliance with the billing statement

disclosure requirements of 15 U.S.C. § 1637, the cardholder is in ***a superior position to determine whether the charges reflected on his regular billing statements are legitimate***." *Id.* (emphasis added).

If the rule were otherwise, as Plaintiff contends it should be here, "a cardholder could disregard both credit card and bank statements indefinitely, or even fail to act upon a discovery that an employee had fraudulently obtained and[/or] was fraudulently using a credit card, and still limit his liability for an employee's fraudulent purchases to $50" (i.e., the amount set forth by TILA for those customers who timely report fraud). *Id.* (citing *Transamerica Ins. Co. v. Standard Oil Co.*, 325 N.W.2d 210, 215 (N.D. 1982) ("[A]n unscrupulous cardholder could allow another to charge hundreds of dollars in goods and services and then attempt to limit his liability to 50 dollars.")). And all the while, the credit card company and/or the bank, having no knowledge of or ability to prevent the fraud, would be left holding the bag for all of the fraudulent charges and/or payments that, after the applicable time periods, they would have no ability to reverse.  That outcome would be manifestly unfair and against public policy.

Despite the law's clear apportionment of risk and Plaintiff's undisputed failure to timely review his Discover account and bank account statements and detect his employee's fraud sooner (SUF 5-12), Plaintiff contends that such law does not apply to him and that, therefore, Discover still has the obligation to further credit his account against his legitimate charges for the following two reasons.

First, Plaintiff contends that TILA and, more specifically, the Fair Credit Billing Act (the "FCBA," which is a subset of TILA), deal with "credit billing" and are, thus, irrelevant to the issue of whether Discover was accurately "credit reporting" Plaintiff's account.[3]  Opp. at 16;1-5; 22:8-13, 22:22-23:3.  Plaintiff's argument lacks merit.

---

[3]  Notably, Plaintiff does not make the same argument with regard to Discover's collections activities, presumably because it is clear under the FCBA that federal law does not "prohibit any action by a creditor to collect any amount which has not been indicated by the [consumer] to contain a billing error."  15 U.S.C. § 1666(c).

Essentially, Plaintiff's position is that a credit card company has the right to "bill" a consumer and attempt collections on any unauthorized charge that is not timely identified by the consumer but that it does not have the right to then "report" the amounts it is legitimately "billing" and attempting to collect.  That is nonsense.  In the end, it only makes sense that federal and state "reporting" statutes do not prohibit a card company from accurately "reporting" amounts it has legitimately "billed" and attempted to collect under applicable law.  And regardless, no matter how these provisions are read, there is no doubt that they do not somehow require Discover to credit Plaintiff's account against his new legitimate charges.

Second, Plaintiff contends that the cases cited by Discover regarding Plaintiff's statutory obligations are inapplicable to him.  Opp. at 16:1-14, 22:19-21.  He attempts to distinguish these cases by claiming that he could not have personally uncovered the fraud here due to his employee's deceitful acts.  *Id.*; *see also* Opp. at 4:1-11 (discussing his employee's doctoring and concealment of records).  But such facts, even if true, are simply immaterial.  *See, e.g., Basch v. Bank of Am. Nat. Trust & Sav. Ass'n*, 22 Cal. 2d 316, 327-28 (1943) ("According to the generally adopted rule, when the agent to whom the duty of examination [of account statements] is entrusted is a dishonest employee who by forgery has obtained funds of his employer from the bank, and whose consequent adverse interest causes him to conceal from his employer the circumstances which would naturally have been disclosed in the course of a proper verification, the employer, though not imputed with knowledge of the fraud of his faithless agent, is, as principal, chargeable with such information as an honest employee, unaware of the wrongdoing, would have acquired from the examination of the canceled checks and bank statements."); *Espresso Roma Corp. v. Bank of America*, 100 Cal. App. 4th 525, 527-530 (2002) (granting summary judgment in favor of bank under California Commercial Code section 4406 where plaintiff's employee forged company checks for his personal benefit and then concealed his actions by removing the forged checks from the bank statements when he sorted the mail).  And again, even

if such facts were relevant, they do not and cannot establish an obligation on the part of Discover to credit Plaintiff's account against his new legitimate charges.

In sum, despite Plaintiff's arguments to the contrary, he made over $1,600 in new legitimate charges that he never paid, despite having an obligation to do so under the law.  Plaintiff has been unable to cite to any legal authority absolving him of this obligation.  For these simple reasons, all of his causes of action fail as a matter of law.

## III.    DESPITE PLAINTIFF'S ARGUMENTS AND PURPORTED "EVIDENCE," EACH OF HIS CAUSES OF ACTION FAIL AS A MATTER OF LAW

### A.    Plaintiff Cannot Establish an FRCA Claim.

Plaintiff does not dispute that in order to establish a claim under the FCRA, he must prove:  (1) that Discover's investigations following its receipt of the two ACDV forms at issue were unreasonable; and independently, (2) that Discover's reporting at the time it received/responded to such ACDV forms was inaccurate.  *See* Mot. at 11:9-23 (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).  Based on the evidence before the Court, it is apparent that Plaintiff cannot establish either of these elements, and thus, summary judgment is appropriate.  *Id.*

#### 1.    Plaintiff Has Not Established Discover Conducted Unreasonable Investigations Under the Circumstances.

Plaintiff makes three arguments in an attempt to establish that Discover's investigations following its receipt of the two ACDV forms were "unreasonable" under the law.  First, Plaintiff argues that Discover has misstated the law concerning "reasonableness" and that, where a "dispute concerns fraud or identity theft," a "more thorough investigation is warranted."  Opp. at 17:13-24, 18:8-11 (citing, in part, *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279 (N.D. Ga. 2006)).  Second, Plaintiff argues that this case is distinguishable from the cases cited by Discover because Plaintiff is not relying on his "own hunches" concerning the investigations and, rather, has provided an expert report and declaration supporting his position.  Opp. at 17:25-18:7.  Third, Plaintiff argues that he has properly disputed Discover's

8

1    material facts on the issue and has presented "relevant" additional facts of his own.

2    Opp. at 17:3-12, 18:12-14.  Plaintiff is wrong on all counts.

3         First, the cases cited by Discover – including *Gorman v. Wolpoff & Abramson,*

4    *LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009) – correctly and completely set forth the

5    standard for determining whether an investigation is reasonable.  Mot. at 11:25-13:13.

6    As repeatedly stated, "what is a reasonable investigation by a furnisher [varies]

7    depending on the circumstances" and "a more limited investigation may be appropriate

8    when," as here, "CRAs provide the furnisher with vague or cursory information about

9    a consumer's dispute." *Chiang*, 595 F.3d at 38.

10        The main case cited by Plaintiff does not alter this standard or the

11   appropriateness of a summary judgment determination here.  In *King*, the court denied

12   a furnisher's summary judgment motion because it found that there was a factual issue

13   as to whether a furnisher's investigation following its receipt of an ACDV form stating

14   that the "consumer claims that this account is fraudulent" was reasonable.  452 F.

15   Supp. 2d at 1279.  The court's decision turned solely on the fact that the furnisher's

16   ***own*** "internal procedures for investigation of suspected fraudulent accounts included

17   requesting additional verification from the consumer" – verification that the furnisher

18   admittedly did not seek there.  *Id.*  Thus, while the court recognized that the law does

19   not affirmatively require the furnisher to contact the consumer in this instance, it held

20   that "the existence of these procedures and [the furnisher's] failure to follow them

21   could allow a reasonable jury to conclude [the furnisher's] investigation was

22   inadequate." *Id.*

23        Here, unlike in *King,* there is no evidence that Discover failed to follow its own

24   procedures upon receipt of the ACDV forms, and thus, the court's reasoning in *King* is

25   not applicable and there is nothing to prevent the Court from entering judgment here.

26        This case is more similar to *Stroud v. Bank of America*, 886 F. Supp. 2d 1308

27   (S.D. Fla. 2012), where the issue set forth in the CRA dispute notices also related to

28   "identity theft" and where the court entered summary judgment in the furnisher's favor.

9

*Id.* at 1314.  In *Stroud*, the nine CRA dispute notices sent to the furnisher stated that the consumer "believed the account was '[n]ot his/hers … [p]rovide or confirm ID' or that [the consumer] believed his credit report contained 'inaccurate information' or that he was the victim of identity theft." *Id.* The court found that the furnisher's investigations in response to such notices were reasonable because the furnisher properly investigated whether the account was the consumer's by confirming that the consumer's personal information was accurate. *Id.* And while the plaintiff attempted to establish such investigation was improper, the "facts" he presented were conclusory and unpersuasive and the arguments he made were not relevant, were incorrect, or were unsupported by competent evidence. *Id.* at 1314-16.  Thus, the plaintiff was unable to meet his burden on summary judgment.

Here, Discover received notices that were similarly as general as those referenced in *Stroud*, and as such, it completed similar investigations and rightfully concluded, both times, that the account at issue was Plaintiff's.  SUF 29-34.  Thus, Discover's investigation was presumptively reasonable.  Further, like in *Stroud*, Plaintiff has done nothing in his Opposition to meet his burden to refute this presumption.  Most notably, the "facts" Plaintiff has provided and the arguments he has made simply do not – and cannot – change the outcome here in light of the general nature of the ACDV forms at issue.  Discover was asked to confirm that the account at issue was Plaintiff's and that is exactly what it did.  SUF 29-34.  Nothing Plaintiff suggests Discover should have done would have altered Discover's conclusion that the account was, in fact, Plaintiff's.

Significantly, the ACDV forms did not list ***even one*** charge purported to be fraudulent or otherwise improper, and as such, Discover was not required to evaluate whether any specific charge that was still being reported was fraudulent, as Plaintiff contends.  *See Gorman*, 584 F.3d at 1158 (holding where CRA notices "were silent as to the approximate date of the [disputed identity-theft] charges, their amount, and the identity of the merchant," furnisher "could not reasonably have been expected to

10

investigate [customer's] challenge to [a particular] charge").  In sum, Discover's investigations were reasonable based on the very general ACDV forms.[4]

Second, Plaintiff argues that he did more to oppose summary judgment than the losing plaintiffs in *Chang* and *Stroud* because he presented an expert report and declaration on the issue of whether the investigation was reasonable.  But Plaintiff's expert, Thomas Tarter, is not a percipient witness and his "opinions" do not amount to "evidence" sufficient to establish the unreasonableness of Discover's investigation. *Chiang*, 595 F.3d at 38 (granting summary judgment where plaintiff "neither sought discovery on nor produced ***any evidence*** whatsoever about the procedures [the furnisher] used" and, thus, the "only evidence on this point consist[ed] of a Verizon employee's uncontested affidavit detailing the procedures followed" (emphasis added)); *Stroud*, 886 F. Supp. 2d at 1314-16 (granting summary judgment where customer "failed to provide ***any evidence,*** as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable" (emphasis added)).

Moreover, Mr. Tarter's reports and declaration concerning the "unreasonable" nature of Discover's investigation are inadmissible and should be stricken for multiple reasons.  *See, e.g.,* Discover's Evidentiary Objections to and Motion to Strike Plaintiff's Evidence and Discover's Reply to the Separate Statement, filed herewith; and Discover's Motion in *Limine* to Exclude the Testimony of Thomas Tarter, Dkt. No. 62. Most notably, such testimony was/is untimely, lacks foundation, and constitutes

---

[4] Significantly, the information provided by the CRAs to a furnisher is that which the consumer originally provided to the CRA.  As such, it is up to the consumer – here, Plaintiff – to provide as much detailed information to the CRA as possible, so that the furnisher will receive notification of the true dispute, and thereafter, can conduct an appropriate investigation and respond thereto.  Here, based on the very general ACDV forms, it can be inferred that Plaintiff failed to provide any such detailed information (*i.e.*, specific disputed charges) to the CRAs.  If, on the other hand, the Plaintiff did provide such information and the CRAs simply chose not to furnish such information to Discover, then Plaintiff would have a claim against the CRAs and not Discover.  *See Chaing*, 595 F.3d at 38 ("If a CRA fails to provide 'all relevant information' to a furnisher, then the consumer has a private right of action against the CRA, [citation], ***but not against the furnisher***."  (emphasis added)).

improper expert analysis, as it consists largely of legal conclusions that are often at odds with what the law requires and the foundational facts testified to by Plaintiff.  For these reasons, the Court should not consider Mr. Tarter's declaration.

Third, the additional "facts" listed by Plaintiff are irrelevant, unsupported by the evidence cited, and/or supported by purported evidence that is not admissible.  While Plaintiff throws up a lot of purported "facts," he does not provide any actual evidence of what Discover did during the discrete time periods between its receipt of each of the ACDV forms and its response to such forms – which are the *only* two periods of time relevant under the FCRA.  The only evidence on the two discreet time periods at issue comes from Discover.  And under the law, that limited, undisputed evidence shows that Discover reasonably investigated the issue that was set forth in such forms – i.e., whether the 2476 account was Plaintiff's.  Under these circumstances, whether Discover did not do a full account reconciliation at some point (Opp. at 17:6) or whether it had Mary Peters deal with over 80 customer service representatives in the over two year period when she was providing varying incomplete/inaccurate lists of unauthorized charges (Opp. at 17:9-10, SUF 19), are simply irrelevant.

In sum, Discover's investigation in response to the ACDV forms was reasonable, and as such, Plaintiff cannot prove an FCRA claim as a matter of law.  Thus, summary judgment is appropriate as to Plaintiff's first cause of action.

> ### 2.      Plaintiff Has Not Established that Discover Was Furnishing Inaccurate Reports When It Responded to the ACDV Forms.

Plaintiff does not dispute that, in order to prove his FCRA claim, he must show that Discover was furnishing *factually inaccurate* information at the time it responded to the ACDV forms at issue.  Mot. at 14:9-28 (citing *Chiang*, 595 F.3d at 38 ("[A] plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions.'" (citations omitted)).  Instead, he simply claims that he has properly disputed Discover's facts on the issue.  Opp. at 18:16-19.  As discussed in Discover's

Reply to Plaintiff's Statement and related documents, Plaintiff has not truly disputed such facts, and his additional facts, do nothing to change the outcome here.

Again, Plaintiff is required to show that, during the discrete time periods when Discover received and responded to the two ACDV forms at issue, Discover was reporting inaccurate and damaging information.  He has not done this.  It remains undisputed that at the time Discover received the first ACDV form, Plaintiff's account was reporting as current and therefore nothing "inaccurate" was reporting that could have led to damages under the FCRA.  SUF 31.  With respect to the reporting at the time Discover responded to the second ACDV form, Discover had given Plaintiff credit for charges far in excess of what was legally required and, thus, never reported as owing and/or as delinquent the entire amount of legitimate charges Plaintiff owed.  Specifically, in January 2013, it is undisputed that the account was reported as past due in the amount of only $355 – far less than the over $1,600 Plaintiff admits he owed Discover (SUF 25, 34) ***and even less than the $458 Mrs. Peters currently contends Plaintiff owed in outstanding legitimate charges*** (M. Peters Decl. at ¶ 14).  And regardless, Discover was also reporting the debt as disputed.  Based on such facts, the reporting inured to Plaintiff's benefit and the only "inaccuracy" – if any – was in his favor.  As such, there was no "inaccuracy" during the relevant time periods that could have caused Plaintiff harm.

Further, Plaintiff's new argument that Discover had no right to report any of his legitimate charges is counter to his testimony and depends on the legal issue of whether Discover was required to provide Plaintiff additional credits against his new legitimate charges.  Again, Plaintiff has presented no legal authority for such a proposition, nor can he.  *See, supra,* section II.  And regardless, because this obligation turns, ***at best***, on a "disputed legal question[]," it is impossible for Plaintiff to show that Discover's reporting was inaccurate here.  *See Chiang*, 595 F.3d at 38.

13

1   Because Plaintiff cannot prove Discover was reporting a damaging factual

2   inaccuracy when it responded to the ACDVs, Plaintiff cannot establish his FCRA

3   claim and summary judgment remains appropriate on Plaintiff's first cause of action.

4           **B.**        **Plaintiff Cannot Establish a CCRAA Claim.**

5   Plaintiff does not dispute that most of his CCRAA claim is preempted by the

6   FCRA.  Mot. at 15:18-16:6; Opp. at 18:21-19:17.  Further, Plaintiff does not truly

7   dispute that, in order to establish a claim under the limited remaining provision of the

8   CCRAA, Plaintiff must prove that Discover "knew or should have known" it was

9   reporting inaccurate information based on "specific knowledge, ***other than solely***

10  ***allegations by the consumer***, that would cause a reasonable person to have substantial

11  doubts about the accuracy of the information."  Opp. at 19:3-8 (citing 15 U.S.C.

12  § 1681s-2(a)(1)(D) (emphasis added)).  Rather, Plaintiff claims he met this standard

13  with his stated "facts."  But none of Plaintiff's "facts" establish that Discover received

14  information, ***other than solely from allegations by Plaintiff and his wife***, that certain

15  charges on the account were unauthorized.  Thus, Plaintiff has not met this standard.

16  Further, to the extent a more lenient standard were applied, Plaintiff still has not

17  provided any evidence showing that, after Plaintiff notified Discover that a particular

18  charge was unauthorized, Discover continued to report that charge as legitimate.  Opp.

19  at 19:9-11 (suggesting Plaintiff can meet his burden by showing Discover negatively

20  reported a charge "after notification of [the] inaccuracy, if the information is

21  inaccurate").  In fact, Plaintiff has not provided ***a shred*** of evidence showing when he

22  or his representatives informed Discover that certain charges were unauthorized and

23  what Discover did with regard to such particular charges from that point forward.  As

24  such, Plaintiff cannot establish that Discover knew or should have known it was

25  inaccurately reporting charges that were reported as unauthorized at any given time.

26  Thus, Plaintiff's CCRAA claim also fails as a matter of law, and the Court

27  should grant Discover summary judgment on Plaintiff's fourth cause of action.

28

14

**C.    Plaintiff Cannot Establish an Identity-Theft Collections Claim, and Plaintiff Has *Not Even Attempted to Argue Otherwise*.**

Plaintiff and Discover agree on one thing:  the FCRA preempts Plaintiff's identity-theft claims to the extent they relate to Discover's "reporting" efforts, but it does not preempt such claims to the extent they relate to Discover's "collection" efforts.  *Compare* Mot. at 17:10-18:5 (section IV.A.3.a. of the Motion, entitled, "To the Extent Plaintiff's Identity Theft Claims are Based on the Furnishing of Information, they are Preempted") *with* Opp. at 19:19-22:1 (arguing the same point).

Apart from establishing this agreement, Plaintiff's Opposition wholly fails to address Discover's stated law and evidence regarding why Plaintiff's identity theft claims under sections 1798.93 and 1788.18 of the California Civil Code fail as a matter of law.  *Compare* Mot. at 18:6-19:16 (section IV.A.3.b. of the Motion entitled, "Discover Did Not Attempt to Collect on a Debt Procured Through Identity Theft") *with* Opp. at 19:19-22:1 (failing to address ***that entire section*** of the Motion).  Further, Plaintiff did not produce ***a shred*** of evidence regarding Discover's collection efforts. In fact, not a single collections communication is referenced by Plaintiff in all of the Opposition papers and declarations, nevermind a communication in which Discover was shown attempting to collect on an identity-theft related charge (as opposed to a legitimate charge Plaintiff made after receiving his new 2476 account number).

As such, it remains clear that Plaintiff has not and cannot establish an claim under sections 1798.93 and 1788.18, and thus, the Court should grant Discover summary judgment on Plaintiffs second and third causes of action.

**IV.    SUMMARY JUDGMENT IS INDEPENDANTLY APPROPRIATE AS TO ALL OF PLAINTIFF'S CLAIMS ON ESTOPPEL GROUNDS**

Plaintiff argues that estoppel is not appropriate here because:  (a) the relevant facts are "disputed"; (b) the provisions of TILA/FCBA concerning Plaintiff's duty to review his account statements and report fraud do not apply to him or his causes of action here, and thus, the cases cited by Discover are distinguishable; and (c) "[i]f

15

Discover's argument is accepted, there would be no need for statutes of limitations under the statutes at issue here" like the FCRA and CCRAA.  Opp. at 22:3-23:23:13. As noted throughout this Reply and in Discover's Evidentiary Objections to and Motion to Strike Plaintiff's Evidence and Discover's Reply to Plaintiff's Statement of Genuine Disputes, Plaintiff has not properly placed the relevant facts in "dispute." Further, as noted in section II above, Plaintiff's attempts to avoid his legal obligation to review and report unauthorized transactions to Discover and his bank also lacks any merit.  Plaintiff's remaining statute of limitation argument is similarly faulty.

Discover's contentions with regard to Plaintiff's failure to have timely reviewed his account statements fall under the umbrella of "issue preclusion" not "statute of limitations."  To be clear, Discover is not arguing that the statutes of limitations periods in Plaintiff's causes of action are inapplicable or irrelevant.  Rather, it is Discover's position that Plaintiff is precluded from arguing that Discover was required to further reverse certain charges and credit them to his account based on his failure to timely review his Discover account statements and report any billing errors.  Likewise, Plaintiff is precluded from arguing that Discover and/or his bank were required to further reverse unauthorized payments made by the bank to Discover based on his failure to timely review his bank account statements and report unauthorized payments to his bank.  *See, e.g., Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051, 1065-66 (1995) (prohibiting plaintiff from establishing checks were forged – on issue preclusion and not statute of limitations grounds – where he did not notify bank of such forgeries in the time required by statute); *Edward Fineman Co. v. Superior Court*, 66 Cal. App. 4th 1110, 1119 (1998) (dubbing such timely notification a "condition precedent" to bringing suit).

For these reasons and those set forth in the Motion, Discover requests that the Court hold that Plaintiff is estopped from recovering anything against Discover or, at the very least, that Discover was not required to further credit Plaintiff's account.

16

## V.    IF ANY CLAIM REMAINS, THE COURT SHOULD DRAMATICALLY LIMIT PLAINTIFF'S POTENTIAL DAMAGES

### A.    Plaintiff Cannot Recover Damages Predating His Claims.

It is axiomatic that Plaintiff cannot recover damages for the time period predating a cognizable "wrongful" act by Discover.  Mot. at 22:22-23:21 (citing *Hariton v. Chase Auto Finance Corp.,* 2010 WL 3075609, *5-6 (C.D. Cal. Aug. 4, 2010)).  To the extent damages predate a "wrongful" act, such damages cannot be said to have been "caused" by that act, and under such circumstances, it is simply impossible for Plaintiff to prove causation.  Plaintiff fails to cite to even one case holding otherwise.  Instead, he argues that the cases cited by Discover do not support this proposition.  Opp. at 23:20-27.  In so doing, Plaintiff wholly ignores the cited *Hariton* opinion, which is directly on point.

In *Hariton*, the plaintiff claimed FCRA damages arising from a car loan for which he was offered an inflated interest rate.  2010 WL 3075609 at *5-6.  The Central District of California granted summary adjudication in a furnisher's favor – thereby precluding plaintiff from recovering damages related to this car loan – because plaintiff admittedly applied for the car loan *prior to* the date the furnisher's potential liability was triggered under the FCRA.  *Id.*  Specifically, the court held that "because [p]laintiff applied for this loan in June 2007 – *before* [d]efendant received the November 16, 2007 report from Experian that triggered potential liability under 15 U.S.C. § 1681s-2(b) – [p]laintiff cannot recover for any heightened interest rate paid on the June loan."  *Id.* at *6 (emphasis added).

Likewise, here, Plaintiff does not dispute he is seeking both economic and non-economic FCRA damages going back to the time period predating Discover's receipt of the relevant ACDV forms from Equifax and Experian in July 2012 and December 2012, respectively.  SUF 29, 32 (setting forth the dates Discover received the relevant ACDV forms); SUF 37-38, 49 (plaintiff claiming damages predating this time period).  Pursuant to *Hariton* and other applicable case law concerning the ripening of a claim

17

under the FCRA, the Court should definitively rule that Plaintiff cannot recover such damages here.  Mot. at 23:1-19 (also citing *Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007), and *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 2d 1186, 1192-93 (D. Kan. 2002)).

By the same standard, Plaintiff does not present any argument as to why he should be allowed to recover damages:  (1) under his CCRAA claim prior to the date he can prove that Discover "kn[ew] or should [have] know[n] the information [it reported was] incomplete or inaccurate" (Cal. Civ. Code § 1785.25(a)); and (2) on his identity-theft collections claims prior to date he can prove Discover first attempted to collect on an identity-theft related debt (Cal. Civ. Code §§ 1788.18, 1798.93).  For the same reasons stated above, and to the extent Plaintiff can prove that either of these things occurred (and he cannot), Plaintiff's damages must be limited to the time period post dating the ripening of these claims.

## B. Plaintiff Cannot Recover Any Economic Damages, in Large Part, Because All Such Damages Relate to Plaintiff's Business.

Plaintiff now apparently claims two types of "economic" damages.  The first is $200,000 to $216,720 in losses based on an alleged lack of credit to service his business.  Opp. at 14:13-28.  Specifically, Plaintiff contends that his sole proprietorship suffered due to Discover's reporting because it "relies upon his available credit to buy parts and service [] accounts" and "to pay [] assistant mechanics when collections are slow," which it was allegedly unable to do when Plaintiff's "available credit dried up" and he was "denied a credit card from US Bank." *Id.*  The second is "$15,000 to $20,000 for unforgiven identity theft charges, along with interest, penalties and fees on those charges of which Discover credited Plaintiff for less than $2,000" and/or "$15,000 to $20,000 in identity theft charges for which [Plaintiff contends he] paid, plus interest, penalties and late fees on those charges." *Id.* at 13:14-14:12.  Neither of these alleged types of "economic" damages are awardable here as a matter of law.

18

1.     **It is Well Settled that Plaintiff May Not Recover Any Economic Damages Sustained by His Business as a Matter of Law.**

The alleged damages "[Mr.] Peters' business suffered" due to his lack of credit caused by Discover's "continuous negative credit reporting" – even if provable[5] – are simply not recoverable as a matter of law. *See* Mot. at 24:20-24 (citing *Hariton*, 2010 WL 3075609 at *5 (explaining "[o]nly damages for injuries personally incurred, ***not injuries to business entities***, are available under FCRA" (emphasis added); holding plaintiff could not seek damages for any heightened interest rate his business (as opposed to plaintiff himself) was required to pay on loan)).  Plaintiff side-steps *Hariton* and contends that he "has incurred damages personally" presumably based on the contention that it was his "sole proprietorship" that was damaged.  Opp. at 14:13-28, 24:11-21.  Plaintiff's reliance on the fact that his business is a sole proprietorship does not change the outcome here.  Under the language of the FCRA and the CCRAA, as consistently interpreted by multiple courts, damages sustained by ***any*** business entity are not recoverable under these applicable credit reporting statutes.

It is well established that "[t]he FCRA only protects individual consumers, not business entities, thus any damages sustained by these business entities are not recoverable under the FCRA." *Johnson v. Wells Fargo Home Mortgage, Inc.*, 558 F. Supp. 2d 1114, 1129, 1132 (D. Nev. 2008); *see also Stich v. BAC Home Loans Servicing, LP*, 2011 WL 1135456, * 4 (D. Colo. Mar. 29, 2011) (explaining "[w]here an individual's credit information is used to obtain credit for business purposes, as

---

[5] Despite Plaintiff's claims to the contrary, it is undisputed that he:  has a credit score of 780 (SUF 39); was never formally denied credit and has been unable to provide any documentary evidence showing otherwise (SUF 40); had the ability to expand his business if that is what he wished to do (SUF 42, 48); and does not know whether there was ever enough business to rehire a mechanic and, regardless, "would still choose to work alone" even "[i]f [he] had good access to credit, sufficient to run [his] business" (SUF 44-47).  Based on these facts, Plaintiff could not prove economic damages to his business even if the law allowed him to do so.  In addition, Mr. Tarter's testimony concerning the contended $216,720 in losses to Plaintiff's business is inadmissible for all of the reasons set forth in Discover's motion *in limine* to exclude such testimony, filed by Discover at Dkt. No. 62.

19

opposed to personal purposes, courts have determined that the credit report does not fall within the realm of the FCRA, which was implemented to protect consumers" and citing cases; holding "damages [business] purportedly incurred as a result of negative information on [plaintiff's] credit report, which information Defendant had furnished," were not actionable and business had no standing); *George v. Equifax Mortgage Servs.*, 2010 WL 3937308, *1-2 (E.D.N.Y. Oct. 5, 2010) (explaining "it is well established that the FCRA does not apply to business or commercial transactions, even when a consumer's credit report impact such transactions" and citing cases; holding plaintiff's "claim for damages due to lost business opportunities is not actionable under the FCRA"); *Tilley v. Global Payments, Inc.,* 603 F. Supp. 2d 1314, 1326-29 (D. Kan. 2009) (explaining "'several courts have held that where the purpose of a plaintiff's credit application was to secure credit for business purposes, as opposed to personal, family or household purposes, the reporting agency's conduct was not covered by the [FCRA]" and citing cases; granting summary judgment on plaintiff's claim of damages from denials of credit for potential expenditures for her bowling alley (*i.e.*, her inability to purchase a new scoring system, which she claimed resulted in lost sales/repair costs to her current system)); *Natale v. TRW, Inc.,* 1999 WL 179678, at *3 (N.D. Cal. Mar. 30, 1999) (explaining "several courts have held that where the purpose of a plaintiff's credit application was to secure credit for business purposes, as opposed to personal, family or household purposes, the reporting agency's conduct was not covered by the [FCRA]" and citing cases; holding plaintiff may not assert FCRA claim to "recover damages related primarily to his businesses").

The reasoning behind these FCRA cases applies with equal force to Plaintiff's CCRAA claims. For example, courts have based the above holdings, in part, on the fact that the term "consumer" is defined as "an individual" under the FCRA, which is the same definition used under the CCRAA. *See, e.g., Johnson*, 558 F. Supp. 2d at 1122-23 (noting "[t]he term 'consumer' is defined as an individual" by the FCRA, and "[t]herefore, it follows that the FCRA is designed to protect consumers in their

individual capacities"); *compare* 15 U.S.C. § 1681a(c) (defining "consumer") *with* Cal. Civ. Code § 1785.3(b) (same).  Similarly, courts have also relied on the fact that "[t]he FCRA protects consumers who are applying for 'credit or insurance to be used primarily for personal, family, or household purposes,'" which is, again, the same protection afforded under the CCRAA.  *George*, 2010 WL 3937308 at *1-2 (referencing the definition of "consumer reports" in its analysis); *Tilley*, 603 F. Supp. 2d at 1326-29 (same); *see also, e.g., Johnson*, 558 F. Supp. 2d at 1123-37 (same); *Natale*, 1999 WL 179678 at *3-4 (same and also referencing Federal Trade Commission guidance regarding the same); *compare* 15 U.S.C. § 1681a(d)(1)(A) (defining "consumer reports") *with* Cal. Civ. Code § 1785.3(c) (defining "consumer credit report").  Thus, the conclusion that Plaintiff cannot recover credit damages related to his business applies with equal force to his CCRAA claims.

And despite Plaintiff's assertion to the contrary, the above law applies with equal force to Plaintiff's business ***despite the fact that it is a sole proprietorship***.  Courts, including at least one district court in California, have found that the form of ownership of plaintiff's business is "immaterial" to the issue of whether business damages are recoverable under the FCRA.  *See Natale*, 1999 WL 179678 at *4 ("The form of ownership, however, is immaterial; the FTC and the case law hold that the FCRA does not apply to transactions related primarily to businesses operated by the consumer."); *see also Tilley*, 603 F. Supp. 2d at 1328-29 (same).  Such courts have held that individuals simply cannot seek damages under the FCRA sustained by their sole proprietorship for the same reasons as those discussed above.  *See Natale*, 1999 WL 179678 at *4; *see also Tilley*, 603 F. Supp. 2d at 1328-29; *cf. Johnson v. Wells Fargo Home Mortgage, Inc.*, 2011 WL 3651873, *4-5 (D. Nev. Aug. 17, 2011) (holding individual's rental property damages were business related, thus precluding recovery of such damages under the FCRA).  Similarly, here, Plaintiff cannot recover, as a matter of law, the $200,000 to $216,720 in damages he attributes to his sole proprietorship based on his alleged lack of access to credit due to Discover's reporting.

21

### 2. The $15,000 to $20,000 Plaintiff Contends Discover "Owes" Plaintiff is Also Not Recoverable.

In the damages section of his Opposition, Plaintiff generally references his "facts" claiming that Discover owes him for allegedly unauthorized charges and payments that were not reversed. But Plaintiff *has never claimed* that Discover's refusal to reverse certain charges or payments creates damages "owed" to him under any of his stated causes of action, and as such, these new "facts" should be dismissed out of hand. *See, e.g.,* Brennan Decl., Ex. 19 (Plaintiff's Response to Interrogatory No. 12). Further, as noted in section II above, Plaintiff provides *neither argument nor any legal authority* for why Discover "owes" him such money under his alleged causes of action or otherwise, and in fact, the law is to the contrary. For these reasons, the stated $15,000 to $20,000 simply does not represent "economic damages" recoverable under any of Plaintiff's stated causes of action and should be ignored.

## VI. CONCLUSION

For the foregoing reasons, Discover respectfully request that the Court enter summary judgment in Discover's favor on all claims asserted by Plaintiff. In the alternative, to the extent any of Plaintiff's claims survive, the Court should rule that Plaintiff cannot recover any damages predating a provable wrongful act on the part of Discover or any damages relating to his sole proprietorship, as a matter of law.

DATED: November 8, 2013

                FINLAYSON WILLIAMS TOFFER
                ROOSEVELT & LILLY LLP


                By:_____*/s/ Jared M. Toffer*_____
                             Jared M. Toffer

                Attorneys for Defendant
                DISCOVER BANK

**PROOF OF SERVICE**

    I am over the age of eighteen years and am not a party to the within action.  I am employed in the County of Orange, State of California, at the law offices of Finlayson Williams Toffer Roosevelt & Lilly LLP, members of the bar of this Court.  My business address is 15615 Alton Parkway, Suite 250, Irvine, CA 92618.  On **November 8, 2013**, I served ☑ a true copy / ☐ an original of the foregoing document(s) described as:

**DEFENDANT DISCOVER BANK'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF FRED J. PETERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

 ✓ **BY CM/ECF NOTICE OF ELECTRONIC FILING ("NEF")**:  Pursuant to controlling General Orders, a true copy will be served by the Court via Notice of Electronic Filing and hyperlink to the document.  I checked the CM/ECF docket for this case and determined that the parties on the attached Service List are on the Electronic Mail Notice List to receive NEF transmission at the e-mail addresses noted.

 ✓ **BY MESSENGER SERVICE TO THE PRESIDING JUDGE**:  I provided the document(s) to a professional messenger service for delivery before 12:00 p.m. the following business day to the Presiding Judge listed on the attached Service List.

\_\_\_ **BY UNITED STATES MAIL**:  I placed the document(s) in a sealed envelope and deposited it for collection and mailing to the parties on the attached Service List, following our ordinary business practices.  I am familiar with the firm's practice for collecting and processing correspondence for mailing.  On the same date that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business with postage fully prepaid.  I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

\_\_\_ **BY OVERNIGHT DELIVERY**:  I placed the document(s) in a sealed envelope or package (with delivery fees paid) addressed to the parties on the attached Service List and deposited it for collection and overnight delivery in a box or other facility regularly maintained by the overnight delivery service.

    I declare under penalty of perjury that the foregoing is true and correct, and that the document(s) listed above was/were printed on recycled paper.  Executed on **November 8, 2013**.

                          */s/ Wendy S. Mills*
                           Wendy S. Mills

Case Title:   Fred J. Peters v. Equifax Information Services, LLC, et al.
Case No.:    EDCV12-01837-TJH(OPx)
File No.:    0692

# SERVICE LIST

BY NEF

- **Robert Francis Brennan**
  rbrennan@brennanlaw.com, igrubbs@brennanlaw.com
- **Lori G Ginex**
  lginex-orinion@fwtrl.com, wmills@fwtrl.com
- **David J Kaminski**
  kaminskid@cmtlaw.com, brownk@cmtlaw.com, brooksl@cmtlaw.com,
  lopezp@cmtlaw.com, yeomansk@cmtlaw.com, WatkinsS@cmtlaw.com
- **Debbie P Kirkpatrick**
  dkirkpatrick@sessions-law.biz, mwinder@sessions-law.biz, acoito@sessions-law.biz
- **Katherine A Klimkowski**
  kaklimkowski@jonesday.com, sjwilson@jonesday.com,
  ECFIrvineNotifications@jonesday.com
- **Albert R Limberg**
  alimberg@sessions-law.biz, mwinder@sessions-law.biz, acoito@sessions-law.biz
- **J Anthony Love**
  tlove@kslaw.com, equifaxecf@kslaw.com
- **Thomas P Quinn,  Jr**
  tquinn@nokesquinn.com, hkhiner@nokesquinn.com, ajohnson@nokesquinn.com
- **James K Schultz**
  jschultz@sessions-law.biz
- **Jared M Toffer**
  jtoffer@fwtrl.com, kcastillo@fwtrl.com

BY MESSENGER

Honorable Terry J. Hatter, Jr.                     Presiding Judge
United States District Court
312 N. Spring Street
Courtroom 17
Los Angeles, CA 90012

24